UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 2:20-cr-200-RBS(s) |
| | ) | |
| v. | ) | |
| | ) | Violation: 15 U.S.C. § 1 |
| GLENMARK PHARMACEUTICALS INC., USA, | ) | (conspiracy to restrain trade – |
| | ) | 1 count) |
| Defendant. | ) | |
| | ) | |

## DEFERRED PROSECUTION AGREEMENT

The United States Department of Justice, Antitrust Division ("United States") and

GLENMARK PHARMACEUTICALS INC., USA ("the Company"), a corporation organized

and existing under the laws of Delaware, by and through its undersigned representative, pursuant

to authority granted by its board of directors, enter into this Deferred Prosecution Agreement

("Agreement"), the terms and conditions of which are as follows:

Criminal Indictment and Acceptance of Responsibility

1.      The Company is charged in the Second Superseding Indictment (the

"Indictment") in the case of *United States v. Glenmark Pharmaceuticals Inc. USA.*, 20-cr-200-

RBS(s), filed in the United States District Court for the Eastern District of Pennsylvania.  The

Indictment charges the Company with one count of conspiring with Teva Pharmaceuticals USA,

Inc., Apotex Corp., and others by agreeing to increase and maintain the price of pravastatin and

other generic drugs sold in the United States, from in or about May 2013 and continuing until at

least December 2015, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

The Company hereby knowingly and voluntarily waives for the purposes of this

Agreement and for the purposes of any charges by the United States arising out of the conduct

described in the Statement of Facts (attached hereto as Attachment A and incorporated by reference into this Agreement) any objection with respect to venue in the United States District Court for the Eastern District of Pennsylvania, Speedy Trial Act, 18 U.S.C. §§ 3161–74, and Federal Rule of Criminal Procedure 48(b).  The United States agrees to defer prosecution of the Company pursuant to the terms and conditions described below.

2.      The Company admits, accepts, and acknowledges that, under U.S. federal law, it is responsible for the acts of its officers, directors, employees, and agents that give rise to the facts set forth in the Statement of Facts.  The Company admits, accepts, and acknowledges that the facts set forth in the Statement of Facts are true and accurate.  Should the United States pursue the prosecution that is deferred by this Agreement, the Company agrees that it will not dispute the Statement of Facts set forth in this Agreement, and, in any such prosecution, the Statement of Facts shall be admissible as: (a) substantive evidence offered by the United States in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the government on cross-examination; and (c) evidence at any sentencing or other hearing.  In addition, the Company agrees not to assert any claim under the United States Constitution, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, Section 1B1.1(a) of the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines"), or any other federal rule that the Statement of Facts should be suppressed or is otherwise inadmissible as evidence in any form.  Neither this Agreement nor the Indictment is a final adjudication of the matters addressed in those documents.

Parties to and Scope of the Agreement

3.      The Company is organized under the laws of Delaware; its principal place of business is located in Mahwah, New Jersey.  This Agreement binds the Company and the United States Department of Justice, Antitrust Division.

Length of the Agreement

4.      This Agreement is effective for a period beginning on the date on which the Agreement is filed (the "Effective Date") and ending three years from the date on which the Agreement is filed (the "Term").  The Company agrees that in the event that the United States determines, in its sole discretion, that the Company has violated any provision of this Agreement, an extension of the Term of the Agreement may be imposed by the United States, in its sole discretion, for up to one year, without prejudice to the United States' right to proceed as provided in Paragraphs 17–22 below.  Any extension of the Agreement extends all terms of this Agreement, including attachments, for an equivalent period, but does not extend the due date for payments provided in Paragraph 8 below, or the terms of divestiture set forth in Attachment E, unless the United States gives the Company written notice to the contrary.

Relevant Considerations

5.      The United States enters into this Agreement based on the individual facts and circumstances of this case.  Among the facts considered were the following:

        (a)      a conviction (including a guilty plea) likely would result in the Company's mandatory exclusion from participation in any federal healthcare programs under 42 U.S.C. § 1320a-7 for a period of not less than five years, which would likely result in substantial consequences to the Company's customers and employees;

(b)     the Company has agreed to cooperate in the United States' ongoing prosecution into criminal antitrust violations among generic drug manufacturers;

(c)     this Agreement has demonstrated that integrity has been restored to the Company's business dealings and operations; and

(d)     this Agreement will allow the Company to preserve its financial viability and remain a viable competitor in the generic drug market while preserving the United States' ability to prosecute the Company should material breaches occur.

<u>Cooperation and Disclosure Obligations</u>

6.     The Company shall cooperate fully and truthfully with the United States in any and all matters relating to the current federal criminal investigation into violations of federal antitrust and related criminal laws involving the production and sale in the United States of generic pharmaceutical products, including the conduct described in this Agreement and the attached Statement of Facts, and other conduct under investigation by the United States, at any time during the Term, until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term (collectively "Federal Proceeding").  Federal Proceeding also includes any investigation, prosecution, litigation, or other proceeding regarding obstruction of, the making of a false statement or declaration in, the commission of perjury or subornation of perjury in, the commission of contempt in, or conspiracy to commit such offenses in any Federal Proceeding.  Upon written request by the Company, the United States agrees to notify the Company if the Federal Proceeding has concluded.  The Company agrees that full, truthful, and continuing cooperation pursuant to this Paragraph will include the following:

(a)     producing to the United States all documents, information, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, and with translations into English, in the possession, custody, or control of the Company or its direct or indirect parents, that are requested by the United States in its sole discretion in connection with any Federal Proceeding, as well as providing to the United States a log of any responsive documents, information, and other materials that were not provided, including an explanation of the basis for withholding the materials, and bearing the burden of establishing the validity of any such an assertion;

(b)     using best efforts to secure the full, truthful, and continuing cooperation of current and former officers, directors, employees, and agents of the Company as may be requested by the United States in its sole discretion.  Such efforts will include making these persons available in the United States and at other mutually agreed-upon locations at the Company's expense for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with the Federal Proceeding; and

(c)     with respect to any information, testimony, documents, records or other tangible evidence provided to the United States pursuant to this Agreement, the Company consents to any and all disclosures to other governmental authorities, including state and local authorities, and those of a foreign government, of such materials as the United States in its sole discretion shall deem appropriate.  The United States agrees it shall provide reasonable written notice and an opportunity for the Company to object prior to making such a disclosure.

7.     In addition to the Cooperation Obligations described above, during the Term of the Agreement, should the Company learn of or possess any credible evidence or allegation of

conduct that may constitute a federal criminal antitrust offense or another federal criminal offense affecting the competitive process by the Company, or its direct or indirect parents, or by any present or former officers, directors, employees, or agents during their employment at the Company or its direct or indirect parents, the Company shall promptly report such evidence or allegations to the United States.  Any information that the Company thus discloses to the United States may include proprietary, financial, confidential, and competitive business information. Public disclosure of the information and reports could discourage cooperation, impede pending or potential government investigations, and thus undermine the United States' objectives in obtaining such reports.  For these reasons, among others, the information and reports and the contents thereof are intended to remain and shall remain nonpublic, except as otherwise agreed to by the parties in writing, or except to the extent that the United States determines in its sole discretion that disclosure would be in furtherance of its discharge of its duties and responsibilities or is otherwise required by law.

Monetary Penalty

8.      The United States and the Company agree that the Company will pay a monetary penalty in the amount of $30 million to the United States Crime Victims Fund.  While the Company retains the option to pay the monetary penalty in full at any time during the Term, the Company must make incremental payments, without interest, in at least the following amounts on the following schedule: $2.5 million on or before August 31, 2023; $2.5 million on or before July 31, 2024; $5 million on or before July 31, 2025; $5 million on or before July 31, 2026; $7.5 million on or before July 31, 2027; and $7.5 million on or before July 31, 2028.  The Company and the United States agree that this penalty is appropriate given the facts and circumstances of this case, including the Relevant Considerations described in Paragraphs 5 and 9.  In light of the

civil causes of action, and civil cases already filed against the Company, including the multidistrict litigation *In Re: Generic Pharmaceuticals Pricing Antitrust Litig.*, Case No. 2:16-md-2724, consolidated in the United States District Court for the Eastern District of Pennsylvania, this Agreement does not include any provision for restitution.

9.     The United States and the Company agree that the relevant Guidelines fine range exceeds the monetary penalty contained in the Agreement.  The United States and the Company further agree that the monetary penalty is appropriate after consideration of U.S.S.G. § 8C3.3(b) due to the inability of the Company to pay a monetary penalty greater than contained in the Agreement without substantially jeopardizing its continued viability.

10.     The penalty set forth in Paragraph 8 is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the United States that $30 million is the maximum penalty that may be imposed in any future prosecution in the event of a breach of this Agreement, and the United States is not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the United States agrees that under those circumstances, it will recommend to the Court that the penalty paid under this Agreement should be offset against any criminal fine the Court imposes as part of a future judgment.  The Company acknowledges that no tax deduction may be sought, and agrees that no tax deduction will be sought, in the United States or elsewhere in connection with the payment of any part of this monetary penalty.

Conditional Release from Liability

11.    In return for the full and truthful cooperation of the Company as described in

Paragraphs 6 and 7, and compliance with all other terms and conditions of this Agreement:

(a)    The United States agrees that, except as provided by this Agreement, it

will not bring criminal charges against the Company for any act or offense committed

before the Effective Date, involving an antitrust conspiracy involving the sale in the

United States of generic pharmaceutical products and as described in the Indictment

and/or the Statement of Facts;

(b)    This conditional release of liability does not provide any protection against

prosecution for any individual;

(c)    Failure by the Company to comply fully with the Cooperation Obligations

under Paragraphs 6 and 7 will void the United States' agreement in Paragraph 11(a), and

the Company may be prosecuted criminally for any federal crime of which the United

States has knowledge; and

(d)    The United States' agreement in Paragraph 11(a) does not apply to

subornation of perjury (18 U.S.C. § 1622), false statements (18 U.S.C. § 1001),

obstruction of justice (18 U.S.C. § 1503 *et seq.*), contempt (18 U.S.C. §§ 401–02), or

conspiracy to commit such offenses.  Its agreement in Paragraph 11(a) also does not

apply to civil matters of any kind, any civil or criminal violation of the federal tax or

securities laws or conspiracy to commit such offenses, or any crimes of violence.

Related Administrative Proceedings

12.    The Company understands that it may be subject to exclusion, suspension or

debarment action by state or federal agencies based upon this Agreement, and that this

Agreement in no way controls what action, if any, other agencies may take.  However, the United States agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action of the fact, manner, and extent of the cooperation and remediation of the Company as a matter for that agency to consider before determining what action, if any, to take.

Divestiture of Assets

13.     The Company agrees that, as a condition of this Agreement, it will divest its rights to sell and distribute the generic drug pravastatin as set forth in Attachment E.

Corporate Compliance Program

14.     The Company represents that it has conducted a review of its compliance program and has implemented and will continue to implement compliance policies and procedures reasonably designed to prevent and detect antitrust violations throughout its operations.

15.     The Company further represents that it will continue to periodically review its antitrust compliance program and make any necessary adjustments and updates based on changes in the Company's operations, circumstances, legal developments, and industry practices, as set forth in Attachment C to this Agreement, and that the Company will report on its antitrust compliance program as set forth in Attachment D to this Agreement.

Deferred Prosecution

16.     In consideration of the undertakings agreed to herein by the Company, the United States agrees that any prosecution of the Company for the conduct set forth in the Indictment and the Statement of Facts be and hereby is deferred for the Term.

17.     The United States further agrees that if the Company fully complies with all obligations under this Agreement, the United States will not continue the criminal prosecution of

9

the Company for the offenses described in Paragraph 1 of the Agreement and, at the conclusion

of the Term, this Agreement shall expire, except for the payment obligations set forth in

Paragraph 8 of the Agreement, the Cooperation Obligations set forth in Paragraph 6 of the

Agreement, and the divestiture obligations set forth in Attachment E of the Agreement.  Within

thirty (30) days of the later of the Company's paying in full the penalty amount set forth in

Paragraph 8 of the Agreement or the expiration of the Term, the United States shall seek

dismissal with prejudice of the Indictment described in Paragraph 1 of the Agreement.

<u>Breach of Agreement</u>

18.     If the United States determines, in its sole discretion, that during the Term of this

Agreement the Company has (a) committed any felony offense under U.S. federal law;

(b) provided to the United States deliberately false, misleading, or materially incomplete

information, including in connection with its disclosure of information about individual

culpability; (c) failed to satisfy any Cooperation Obligations as set forth in Paragraphs 6 and 7 of

this Agreement; (d) failed to satisfy the requirements set forth in Attachment C; or (e) otherwise

failed to completely perform or fulfill any of the Company's obligations under this Agreement,

regardless of whether the United States becomes aware of such a breach after the Term is

complete, the Company shall thereafter be subject to prosecution for any federal criminal

violation related to the sale of generic drugs in the United States of which the United States has

knowledge, including, but not limited to, the charges in the Indictment described in Paragraph 1,

which may be pursued by the United States in the United States District Court for the Eastern

District of Pennsylvania or any other appropriate venue.  Any such prosecution may be premised

on information provided by any source, including but not limited to the Company.

19.     Any such prosecution relating to the conduct described in the Statement of Facts

or relating to conduct known to the United States prior to the date of the signing of this

Agreement that is not time-barred by the applicable statute of limitations on the Effective Date

may be commenced against the Company, notwithstanding the expiration of the statute of

limitations between the Effective Date and the expiration of the Term plus one year.  Thus, by

signing this Agreement, the Company agrees that the statute of limitations with respect to any

such prosecution that is not time-barred on the Effective Date shall be tolled for the later of the

duration of the Term plus one year, or the full payment of the penalty described in Paragraph 8

plus one year.

20.     In the event the United States determines that the Company has breached this

Agreement, the United States agrees to provide the Company with written notice of such breach

prior to instituting any prosecution resulting from such breach.  Within thirty (30) days of receipt

of such notice, the Company shall have the opportunity to respond to the United States in writing

to explain the nature and circumstances of such breach, as well as the actions the Company has

taken to address and remediate the situation, which the United States shall consider in

determining whether to pursue prosecution of the Company.

21.     In the event that the United States determines that the Company has breached this

Agreement: (a) all statements made by or on behalf of the Company to the United States or to the

Court, including the Statement of Facts, and any testimony given by any individual before a

grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to

this Agreement, and any leads derived from such statements or testimony, shall be admissible in

evidence in any and all criminal proceedings brought by the United States against the Company;

and (b) the Company shall not assert any claim under the United States Constitution, Rule 11(f)

of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any

other federal rule that any such statements or testimony made by or on behalf of the Company prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible.  The decision whether any conduct or statement of any current or former director, officer, or employee, or any person acting on behalf of, or at the direction of, the Company, will be imputed to the Company for the purpose of determining whether the Company has violated any provision of this Agreement shall be in the sole discretion of the United States.

22.     The Company acknowledges that the United States has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company breaches this Agreement and this matter proceeds to judgment.  The Company further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

23.     On the date that the Term expires or on the first business day thereafter, as set forth in Attachment F, the Company, by its President, will certify to the United States that the Company has met the disclosure obligations set forth in Paragraph 7 of this Agreement.  Each certification will be deemed a material statement and representation by the Company to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

Sale, Merger, or Other Change in Corporate Form

24.     The Company agrees that, during the Term, if it undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to the Company's consolidated operations, excluding the divestiture referenced in Attachment E, whether such sale is structured as a sale, asset sale, merger, or transfer, it shall provide notice to the United States at least sixty (60) business days prior to undertaking any such sale, merger,

transfer, or other change in corporate form.  Unless, after receiving the required notice from the

Company of the transaction, the United States consents in its sole discretion that a specific

transaction will not be subject to this provision, the Company shall include in any contract for

sale, merger, or transfer a provision binding the purchaser, or any successor in interest thereto, to

the obligations described in this Agreement.  Unless the United States consents as described

above, the purchaser or successor in interest must also agree in writing that the United States'

ability to enforce all provisions of this Agreement, including to determine that it has been

breached, is applicable in full force to that entity.  The Company agrees that, unless the United

States consents as described above, the failure to include these provisions in the transaction will

make any such transaction null and void.  The United States shall inform the Company within

thirty (30) business days of receiving the Company's notification if it consents that the

transaction(s) will not be subject to this provision, or if it determines that the transaction(s) will

have the effect of circumventing or frustrating the purposes of this Agreement.  If the United

States does not respond to the Company's notification within thirty (30) business days, the

transaction(s) at issue shall be deemed not to be subject to this provision and not to have the

effect of circumventing or frustrating the purposes of this Agreement.  If at any time during the

Term the Company engages in a transaction(s) that has the effect of circumventing or frustrating

the purposes of this Agreement, the United States may deem it a breach pursuant to Paragraphs

17–22 of this Agreement.  Nothing herein shall restrict the Company from indemnifying (or

otherwise holding harmless) the purchaser or successor in interest for penalties or other costs

arising from any conduct that may have occurred prior to the date of the transaction(s), so long as

such indemnification does not have the effect of circumventing or frustrating the purposes of this

Agreement, as determined by the United States in its sole discretion.

<u>Public Statements by the Company</u>

25.     The Company expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents, or any other person authorized to speak for the Company or any direct or indirect parent, make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company set forth above or as described in the Statement of Facts.  Any such contradictory statement shall, subject to cure rights of the Company described below, constitute a breach of this Agreement, and the Company thereafter shall be subject to prosecution as set forth in Paragraphs 17–22 of this Agreement.  The decision whether any public statement by any such person contradicting a fact contained in the Statement of Facts will be imputed to the Company for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the United States.  If the United States determines that a public statement by any such person contradicts in whole or in part a statement contained in the Statement of Facts, the United States shall so notify the Company, and the Company may avoid a breach of this Agreement by publicly repudiating such statement(s) within five (5) business days after notification.  The Company shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Statement of Facts.  This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Company in the course of any criminal, regulatory, or civil case initiated against such individual, unless such

individual is speaking on behalf of the Company.

26.     The Company agrees that if the Company or any direct or indirect parent issues a press release or holds any press conference in connection with this Agreement, the Company shall first consult the United States to determine: (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the United States and the Company; and (b) whether the United States has any objection to the release or proposed statements.

Limitations on Binding Effect of Agreement

27.     This Agreement is binding on the Company and the United States Department of Justice, Antitrust Division, but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities.

Notice

28.     Any notice to the United States under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to:

> Ryan Tansey, Chief, Washington Criminal I Section
> Antitrust Division, U.S. Department of Justice
> 450 Fifth Street, NW, Suite 11300
> Washington, DC 20530

Any notice to the Company under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to the General Counsel of the Company, at 750 Corporate Drive, Mahwah, NJ 07430, with a copy

to the Company's attorney:

> Niall E. Lynch
> Latham & Watkins LLP
> 505 Montgomery Street
> Suite 2000
> San Francisco, CA 94111-6538

Notice shall be effective upon actual receipt by the United States or the Company.

### Entirety of Agreement

29.     This Agreement, including Attachments A–F, sets forth all the terms of the

agreement between the Company and the United States.  No amendments, modifications, or

additions to this Agreement shall be valid unless they are in writing and signed by the United

States, the attorney(s) for the Company, and a duly authorized representative of the Company.

DATED:  July 31st, 2023


Respectfully submitted,

BY: _____

Sanjeev Krishan
President
Glenmark Pharmaceuticals Inc., USA

BY: _____

Mark C. Grundvig
Julia M. Maloney
Attorneys
Antitrust Division
U.S. Department of Justice
450 Fifth Street, NW, Suite 11300
Washington, DC 20530
(202) 704-8039

BY: _____

Niall Lynch
Aaron Chiu
Counsel for Glenmark Pharmaceuticals
Inc., USA

BY: _____

Jacqueline C. Romero
U.S. Attorney
Eastern District of Pennsylvania

## COMPANY OFFICER'S CERTIFICATE

I have read the Deferred Prosecution Agreement ("Agreement") and carefully reviewed every part of it with outside counsel for Glenmark Pharmaceuticals Inc., USA (the "Company"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Company, to each of its terms. Before signing this Agreement, I consulted outside counsel for the Company. Counsel fully advised me of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of the Company. I have advised and caused outside counsel for the Company to advise the Board of Directors fully of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the Senior Vice President, General Counsel for the Company and that I am authorized to execute this Company Officer Certificate.

DATED: _July 31, 2023_

BY: _Laura Lester_

Laura Lester
Senior Vice President, General Counsel
Glenmark Pharmaceuticals Inc., USA

17

## CERTIFICATE OF COUNSEL

I am counsel for Glenmark Pharmaceuticals Inc., USA (the "Company") in the matter

covered by the Deferred Prosecution Agreement ("Agreement").  In connection with such

representation, I have examined relevant Company documents and have discussed the terms of

this Agreement with the Company Board of Directors.  Based on our review of the foregoing

materials and discussions, I am of the opinion that the representative of the Company has been

duly authorized to enter into this Agreement on behalf of the Company and that this Agreement

has been duly and validly authorized, executed, and delivered on behalf of the Company and is a

valid and binding obligation of the Company.  Further, I have carefully reviewed the terms of

this Agreement with the Board of Directors and the General Counsel of the Company.  I have

fully advised them of the rights of the Company, of possible defenses, of the Sentencing

Guidelines' provisions and of the consequences of entering into this Agreement.  To my

knowledge, the decision of the Company to enter into this Agreement, based on the authorization

of the Board of Directors, is an informed and voluntary one.

DATED: July 31, 2023

BY: _____

Niall Lynch
Latham & Watkins, LLP
Counsel for Glenmark Pharmaceuticals Inc., USA

18

**Attachment A: Statement of Facts**

From in or around May 2013 until at least in or around December 2015 (the "Relevant Period"), Glenmark Pharmaceuticals Inc., USA ("Glenmark"), a corporation organized and existing under the laws of Delaware with its principal place of business in Mahwah, New Jersey, was engaged in the sale of generic drugs in the United States and elsewhere, and employed 50 or more individuals.

During the Relevant Period, Glenmark, through certain of its officers and employees, including high-level personnel of Glenmark, conspired with Teva Pharmaceuticals USA, Inc., Apotex Corp., and other individuals and entities engaged in the sale of generic drugs to suppress and eliminate competition by agreeing to increase and maintain the price of pravastatin. Glenmark's sales of pravastatin affected by this conspiracy totaled at least $77,000,000.

Generic drugs sold by Glenmark and its co-conspirators, as well as payments for affected generic drugs, traveled in interstate commerce.  The business activities of Glenmark and its co-conspirators in connection with the production and sale of generic drugs affected by this conspiracy were within the flow of, and substantially affected, interstate trade and commerce. Generic drugs affected by the activities of Glenmark and its co-conspirators were sold to customers in this District.

**Attachment B: Certificate of Corporate Board Resolution**

WHEREAS, Glenmark Pharmaceuticals Inc., USA (the "Company") has been engaged in discussions with the United States Department of Justice, Antitrust Division ("United States") regarding issues arising in relation to the conduct described in Attachment A; and

WHEREAS, in order to resolve such discussions, it is proposed that the Company enter into a Deferred Prosecution Agreement with the United States dated July 31, 2023 ("Agreement"); and

WHEREAS, the Company's General Counsel, Laura Lester, together with outside counsel for the Company, have advised the Board of Directors of the Company of its rights, possible defenses, the Sentencing Guidelines' provisions, and the consequences of entering into such Agreement with the United States;

Therefore, the Board of Directors has RESOLVED that:

1.      The Company (a) acknowledges the filed Second Superseding Indictment charging the Company with one count of violating 15 U.S.C. § 1; (b) waives for the purposes of this Agreement and for the purposes of any charges by the United States arising out of the conduct described in the Statement of Facts (attached as Attachment A and incorporated by reference into this Agreement) any objection with respect to venue and Speedy Trial Act, 18 U.S.C. §§ 3161–74; and (c) agrees to pay a monetary penalty in the amount of $30 million to the United States Crime Victims Fund, in installments, without interest, of $2.5 million on or before August 31, 2023; $2.5 million on or before July 31, 2024; $5 million on or before July 31, 2025; $5 million on or before July 31, 2026; $7.5 million on or before July 31, 2027; and $7.5 million on or before July 31, 2028, with respect to the conduct described in Attachment A;

2.      The Company accepts and will comply with all of the terms and conditions contained in the Agreement and its attachments;

3.      The President of the Company, Sanjeev Krishan, is hereby authorized, empowered and directed, on behalf of the Company, to execute the Agreement substantially in such form as reviewed by this Board of Directors at this meeting with such changes as the President of the Company, Sanjeev Krishan, may approve;

4.      The President of the Company, Sanjeev Krishan, is hereby authorized, empowered and directed to take any and all actions as may be necessary or appropriate and to approve the forms, terms or provisions of any agreement or other documents as may be necessary or appropriate, to carry out and effectuate the purpose and intent of the foregoing resolutions; and

5.      All of the actions of the President of the Company, Sanjeev Krishan, which actions would have been authorized by the foregoing resolutions except that such actions were taken prior to the adoption of such resolutions, are hereby severally ratified, confirmed, approved, and adopted as actions on behalf of the Company.

DATED: _31st July 2023_

BY:   ___Rajeev Sharma___

Rajeev Sharma
Secretary
Glenmark Pharmaceuticals Inc., USA

21

**Attachment C: Corporate Compliance Program**

As part of the Deferred Prosecution Agreement between Glenmark Pharmaceuticals Inc., USA (the "Company") and the United States Department of Justice, Antitrust Division ("United States") dated July 31, 2023 ("Agreement"), and to address deficiencies, if any, in the Company's compliance program, including its policies, procedures, and internal controls relating to compliance with the Sherman Antitrust Act and other applicable antitrust laws and regulations, the Company agrees to continue to conduct, in a manner consistent with all of the Company's obligations under this Agreement, appropriate reviews of its existing policies, procedures, and internal controls.

Where necessary and appropriate, the Company agrees to modify its compliance program, including compliance policies and procedures designed to ensure the prevention and detection of antitrust violations.  At a minimum, this should include the following elements:

1.  *Design and Comprehensiveness*.  The Company has and will continue to have compliance policies and procedures reasonably designed to prevent antitrust violations. The policies and procedures should be integrated into the Company's business practices and reinforced through appropriate internal controls specifically tailored to the Company's business.  The Company will continue to notify all employees that compliance with the policies and procedures is the duty of individuals at all levels of the company.

2.  *Culture of Compliance.*  The Company's senior leadership as a whole, through words and actions, will work to foster a culture of compliance throughout the organization. Senior leadership across the organization are and will be held accountable for failures in the Company's antitrust compliance.

22

3.    *Responsibility for the Compliance Program.*  The Company has assigned responsibility

to one or more senior leaders in the company with sufficient background and competence

in antitrust law for the implementation and oversight of the antitrust compliance program.

Those responsible for the Company's antitrust compliance program will be provided with

sufficient autonomy, authority, and seniority within the Company's governance structure

to effectuate the compliance program.

4.    *Periodic Risk-Based Reviews.*  The Company will conduct periodic antitrust risk

assessments to ensure that its antitrust compliance program, including internal controls, is

tailored to the Company's individual circumstances.  In undertaking such risk

assessments, the Company will review its policies and procedures and make any

necessary adjustments and updates based on changes in the Company's operations,

circumstances, legal developments, and industry practices.

5.    *Training and Communication.*  The Company has developed an antitrust compliance

training program tailored to the Company's specific antitrust risks and will periodically

update the program to ensure that it reflects the Company's current antitrust policies and

reporting procedures, and legal, technical, or marketplace developments.  The audience,

timing, frequency, form, and content of the Company's antitrust training should be

commensurate with the Company's operations and circumstances.  The Company should

make certain that all relevant employees (regardless of management level or location)

understand the antitrust training and when and how to report a possible antitrust violation.

Training may include participation and compliance certifications as appropriate.  The

Company will also maintain detailed records of training and compliance-related

communications.

6.   *Monitoring and Auditing.*  The Company will continue to conduct regular monitoring and auditing of its antitrust compliance program to ensure that the program is fully implemented and followed.  If the Company's monitoring and auditing functions detect potential violations, they will be reported to the Company's governing authority by the individual(s) responsible for the compliance program.  The Company will also revise its policies, procedures, and internal controls as appropriate to reflect the results and findings of monitoring and audit activities.

7.   *Reporting and Guidance.*  The Company has implemented an effective and confidential system for communication that employees may use to seek guidance, raise concerns, or report potential antitrust violations anonymously and confidentially without fear of retaliation.  The system will continue to be widely disseminated to all relevant employees and will be designed to respond promptly to all communications.  The Company will continue to maintain detailed records of any communications through this system and how those communications were addressed.

8.   *Incentives and Discipline.*  The importance of antitrust compliance will be reflected in the Company's employee evaluation, incentive, and compensation structure.  The Company will discipline employees, managers, and senior executives as appropriate for antitrust compliance failures.

9.   *Remediation.*  The Company shall have procedures in place to address failures in the Company's antitrust compliance program and to communicate changes in its policies to employees.

**Attachment D: Compliance Reporting Requirements**

As part of the Deferred Prosecution Agreement between Glenmark Pharmaceuticals Inc., USA (the "Company"), and the United States Department of Justice, Antitrust Division ("United States") dated July 31, 2023 ("Agreement"), the Company agrees that it will report to the United States regarding implementation of the Company's compliance program, including policies, procedures, and internal controls described in Attachment C. During the Term, the Company shall: (1) conduct an initial review and submit an initial report, and (2) conduct and prepare at least two (2) follow-up reviews and reports, as described below:

1.     By no later than six (6) months from the Effective Date of the Agreement, the Company shall submit to the United States a written report setting forth a complete description of the Company's antitrust compliance program, any proposals reasonably designed to improve the Company's policies, procedures, and internal controls for ensuring compliance with the criminal antitrust laws, and the proposed scope of the subsequent reviews. The report shall be transmitted to Ryan Tansey, Chief, Washington Criminal I Section, Antitrust Division, U.S. Department of Justice, 450 Fifth St. NW, Suite 11300, Washington, DC, 20530. The Company may extend the time period for issuance of the report with prior written approval of the United States. The United States may respond to the report by requesting additional information and/or requesting that the Company take further action to improve its policies, procedures, and internal controls for ensuring compliance with the criminal antitrust laws.

2.     The Company shall undertake at least two follow-up reviews, and the Company shall submit to the United States a written report setting forth a complete description of each follow-up review. The follow-up reviews and reports shall incorporate comments from the United States on the Company's prior reviews and reports, to further monitor and assess whether

the Company's policies, procedures, and internal controls are reasonably designed to detect and prevent violations of the criminal antitrust laws.

3.      The first follow-up review and report shall be completed by no later than one year after the initial report is submitted to the United States.  The second follow-up review and report shall be completed and delivered to the United States no later than thirty days before the end of the Term.

4.      The reports likely will include proprietary, financial, confidential, and competitive business information.  Moreover, public disclosure of the reports could discourage cooperation and impede pending or potential government investigations, and thus undermine the objectives of the reporting requirement.  For these reasons, among others, the reports and the contents thereof are intended to remain and shall remain non-public, except as otherwise agreed to by the parties in writing, or except to the extent that the United States determines in its sole discretion that disclosure would be in furtherance of the United States' discharge of its duties and responsibilities or is otherwise required by law.

5.      The Company may extend the time period for submission of any of the follow-up reports with prior written approval of the United States.

**Attachment E: Divestiture**

As part of the Deferred Prosecution Agreement between Glenmark Pharmaceuticals Inc., USA (the "Company") and the United States Department of Justice, Antitrust Division ("United States") dated July 31, 2023 ("Agreement"), the Company agrees that, within seven (7) months of the Effective Date, it will amend its distribution agreement with Glenmark Pharmaceuticals Ltd. to rescind the Company's rights to distribute the generic drug pravastatin in the United States.  The Company agrees that it will provide to the United States quarterly reports on its efforts to complete this divestiture until such divestiture is completed to ensure compliance with this Agreement.  Absent explicit approval from the United States, the Company will cease all sales and supply of pravastatin in the United States no later than seven (7) months after the Effective Date.  The Company will notify the United States in writing when it has concluded pravastatin sales; the date of that notice shall be referred to as the Divestiture Date.  The Company shall not resume sales of pravastatin in the United States until five (5) years after the Divestiture Date.

Glenmark Pharmaceuticals Ltd. agrees that it will make its best efforts to locate and contract with another entity to distribute pravastatin in the United States following the Company's divestiture.  Glenmark Pharmaceuticals Ltd. may continue to sell pravastatin in the United States through its current Master Manufacturing Agreement with its current customer. Glenmark Pharmaceuticals Ltd. agrees that it will not enter into any contractual or other relationship with any other Glenmark entity, Teva Pharmaceuticals, Inc. USA, Apotex Corp., or any related entities—regardless of whether the entity exists as of the Effective Date—for the sale or distribution of pravastatin in the United States for a period of at least five (5) years from the Divestiture Date.

27

DATED: ___31st JULY 2023___

BY: _____
Sanjeev Krishan
President
Glenmark Pharmaceuticals Inc., USA


BY: _____
VS Mani
Chief Financial Officer
Glenmark Pharmaceuticals Ltd.

**Attachment F: Certification**

To:     United States Department of Justice
        Antitrust Division
        Attention: Washington Criminal II section

Re:     Deferred Prosecution Agreement Disclosure Certification

The undersigned certifies, pursuant to Paragraph 2 of the Deferred Prosecution Agreement filed on August 1, 2023 in the U.S. District Court for the Eastern District of Pennsylvania, by and between the United States Department of Justice, Antitrust Division ("United States") and Glenmark Pharmaceuticals Inc., USA ("the Company") dated July 31, 2023 ("Agreement"), that the undersigned is aware of the Company's disclosure obligations under Paragraph 7 of the Agreement and that the Company has disclosed to the United States any and all evidence or allegations of conduct required pursuant to Paragraph 7 of the Agreement ("Disclosable Information").  This obligation to disclose information extends to any and all Disclosable Information that has been identified through the Company's compliance program, whistleblower channel, internal audit reports, due diligence procedures, investigation process, or other Company sources and processes.  The undersigned further acknowledges and agrees that the reporting requirement contained in Paragraph 7 and the representations contained in this certification constitute a significant and important component of the Agreement and the United States' determination whether the Company has satisfied its obligations under the Agreement.

The undersigned hereby certifies that he/she is the President of the Company and that he/she has been duly authorized by the Company to sign this Certification on behalf of the Company.

This Certification shall constitute a material statement and representation by the undersigned and by, on behalf of, and for the benefit of, the Company to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and such material statement and representation shall be deemed to have been made in the Eastern District of Pennsylvania.  This Certification shall also constitute a record, document, or tangible object in connection with a matter within the jurisdiction of a department and agency of the United States for purposes of 18 U.S.C. § 1519, and such record, document, or tangible object shall be deemed to have been made in the Eastern District of Pennsylvania.

DATED: _____

BY:    _____

President
Glenmark Pharmaceuticals Inc., USA